## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 25-mj-256 (GMH) |
| | ) | |
| ERIC MALIK SMITH | ) | |

## DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S REQUEST TO OVERTURN THE MAGISTRATE COURT'S RELEASE ORDER

Defendant Eric Smith, by and through counsel, opposes the government's request to overturn the release order issued by the Magistrate Judge on October 29, 2025, pursuant to the Bail Reform Act, 18 U.S.C. § 3142.

The government seeks to detain Mr. Smith yet again, despite the finding of three magistrate judges that he should be released. First, a magistrate judge in Superior Court found that the case lacked probable cause in a preliminary detention hearing upon his arrest on October 27, 2025. Then, after the government sought detention again after obtaining a federal complaint for the same alleged conduct, the magistrate court agreed that the case had substantial evidentiary problems and released Mr. Smith on October 29, 2025. Lastly, he was released on November 3, 2025, after being arrested on a removal warrant for a supervised release alleged violation in West Virginia alleging the same underlying conduct in this matter. The Honorable Matthew J. Sharbaugh determined that nothing had changed in the past few days to warrant coming to a difficult conclusion than the magistrate judge who spent hours assessing the Bail Reform factors.

The Honorable G. Michael Harvey, released Mr. Smith for several reasons, including the finding that the weight of the evidence weighed so strongly in the defense's favor that it was his belief that "this case is not going anywhere." Despite the government's contentions, this determination was based mostly upon the insufficiency of the evidence, not just the glaring Fourth Amendment problems. However, that was not the only reason for the magistrate court's findings. The court noted that Mr. Smith has only one prior nonviolent felony conviction, and other misdemeanor offenses. The court also noted that there was no indication that Mr. Smith posed a risk of non-appearance, especially because of how weak the government's case is. There was nothing that distinguished this matter from the many 922(g)(1) cases that have come before the court in the past several months where release was granted in far more aggravating factors with defendants with far more serious criminal records.

Because this was not a close case, the magistrate court also denied the government's request to stay the order of release pending appeal. The magistrate court ordered strict conditions of release, including:

1) Home Detention;

2) Must reside at the residence provided on the record;

3) Participate in the High Intensity Supervision Program with GPS monitoring;

4) Not possess a firearm, destructive device, or other dangerous weapon;

5) Not use or possess any controlled substance.

*See* ECF No. 9. Mr. Smith was released from the D.C. Jail on the late night of October 29, 2025, and has been in perfect compliance with these conditions ever since. On the morning of October 30, 2025, he reported to install his GPS monitor and reported to his pretrial orientation. He also reported to US Probation who is providing courtesy supervision for Case no. 3:23-cr-156. Because his probation officer was in the field on October 30, he advised Mr. Smith to come back the next day, which he did. Then on November 3, 2025, Mr. Smith reported again to pretrial, where he was arrested in the courthouse on a warrant that was issued in 3:23-cr-156 unbeknownst to him. Later that afternoon, he was released on the same conditions to appear in West Virginia on the alleged violations that are based upon the new alleged law violation in this matter. *See* 25-mj-259 (MJS).

There is nothing in the government's appeal that was not carefully considered by the magistrate court. For the reasons discussed below, the decision of the magistrate court should be affirmed and Mr. Smith should be permitted to continue on pre-trial supervision.

## ARGUMENT

### THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO OVERTURN THE MAGISTRATE COURT'S RELEASE ORDER

#### A. The Applicable Legal Standard

The Bail Reform Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond unless the government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required or . . . the safety of any other person or the community." 18 U.S.C. §§ 3142(b), 3142(f)(2)(B). In other words, "the default position of the law . . . is that a defendant should be release pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

If the case involves a felony that is *not* a crime of violence but that involves the alleged possession of a dangerous weapon, upon motion by the government, the Bail Reform Act requires the court to hold a hearing to determine whether any condition or combination of conditions will reasonably assure the defendant's appearance in court and the safety of persons and the community, 18 U.S.C. § 3142(f)(1)(E); 18 U.S.C. § 3142(f)(2)(A). When imposing a condition, or combination of conditions, the court must select the "least restrictive" conditions. 18 U.S.C. § 3142(c)(1)(B).

There *is no rebuttable presumption of detention* for Mr. Smith and so the presumption is rather that he should be released. The government bears the burden

of persuasion. In determining whether the government has met its burden of persuasion by clear and convincing evidence proving that *no combination of conditions* can protect a person or the community, or by a preponderance of evidence that *no combination of conditions* can assure the defendant's appearance, courts consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, including his physical and mental condition, family and community ties, past conduct, drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger posed to any person by release. 18 U.S.C. § 3142(g).

Mr. Smith agrees that this Court has the authority to review the Magistrate Judge's release order pursuant to 18 U.S.C. § 3145(a)(1). The Court interprets the Bail Reform Act and any terms therein *de novo. United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009).

**B. <u>The Magistrate Court's Determinations Should be Affirmed Because the Court Properly Assessed the 3142 factors</u>**

**i.    The Weight of the Evidence**

The government charges that on October 27, 2025, that law enforcement conducted a traffic stop on a vehicle that Mr. Smith was driving based upon the car's Virginia tags being expired by less than one month. Based upon a minor traffic violation, several members of MPD, the FBI, and HIS gathered to confront the vehicle. Law enforcement learned that Mr. Smith was not the owner of the vehicle, and rather that it belonged to his girlfriend's sister. Upon engaging with officers, both Mr. Smith and the passenger were asked to step out of the vehicle based upon an

officer allegedly observing a bottle of liquid that appeared to be alcohol in the back seat.[1] The officers then conducted an illegal search of the vehicle, including a backpack that was at the foot of the passenger seat. The first search of the driver side area yielded no results despite an officer flashing a light on the floorboard and underneath the driver seat. However, approximately fifteen minutes later, a firearm was allegedly discovered underneath the driver seat. When this firearm was discovered, law enforcement celebrated saying, "I knew it was there!" Based upon the illegal search of the backpack, law enforcement discovered pills that were not indicative of sales as well as $500 that was also not indicative of sales.

The government is mistaken that the magistrate court only considered Fourth Amendment issues when analyzing this factor. Rather, the magistrate court mostly assessed the unlikelihood that a jury would convict Mr. Smith on the evidence in this case. Not only would the government have to try to prove their case based upon a theory of constructive possession, but they would also struggle to meet the elements under this theory given the fact that this was not Mr. Smith's vehicle, the firearm was not in plain view and was in a location that was not readily accessible. Furthermore, there was nothing else found inside the vehicle that corroborates the government's theory that Mr. Smith would have been a primary driver of this vehicle the past few months.

---

[1] The government incorrectly states in its appeal that Mr. Smith refused to get out the car when ordered. Rather, Mr. Smith inquired first with police why it was necessary for him to get out of the car. Mr. Smith then complied and did not have to be forcibly removed from the car. Afterwards, remained in handcuffs and was cooperative, did not resist, and did not try to flee.

In addition to the insufficiency of the evidence, the magistrate court vehemently disagreed with the government that this case would ever pass a suppression hearing based upon its identical facts to *United States v. Freeman*, 25-cr-127 (BAH) (D.D.C. August 13, 2025), where The Honorable Beryl A. Howell suppressed evidence in a similar matter. The magistrate court concluded that based upon the myriad of evidentiary and blatant legal problems that exist, that detaining someone who would likely not be convicted later was problematic.

This is the same conclusion that the magistrate and district court came to in *United States v. Antowan Hagans*, 25-cr-0114 (AHA). In that matter, Judge Faruqui also released Mr. Hagans based upon the glaring evidentiary and legal issues in the case. Judge Ali affirmed the magistrate court's decision and later suppressed the evidence in the case. *See* ECF No. 32 (Judge Ali finding that Mr. Hagans' Fourth Amendment rights were violated).

This matter will likely be no different contrary to the government's arguments that were not successful previously before Judge Howell in the *Freeman* matter. As the magistrate court noted at Mr. Smith' detention hearing, Judge Howell considered *United States v. Washington*, 670 F.3d 1321 (D.C. Cir. 2010), and distinguished it in her ruling. The magistrate court in this matter noted that the government had not convinced it that this case was any different than the *Freeman* matter.

The government, at another hearing before Judge Sharbaugh on November 3, 2025, again tried to convince another magistrate court to detain Mr. Smith despite the Honorable G. Michael Harvey spending two days at two separate detention

hearings to carefully consider the 3142 factors. Government counsel noted at this hearing that it was his mistake for agreeing to an immediate detention hearing on October 28, 2025, suggesting that because of the "rushed" nature of everything, that Judge Harvey was not able to fully consider all the evidence. However, Judge Harvey held two hearings, not one, and in the course of more than 3 hours over two days, he was able to view the BWC evidence as well as read the *Freeman* ruling transcript. Judge Harvey was also able to see the video of the August 2025 arrest that led to a dismissal at a preliminary hearing in Superior Court. Judge Harvey did not come to a "rushed" conclusion to release Mr. Smith just like the Superior Court judge before him did not come to a "rushed" conclusion to find that no probable cause existed when he released Mr. Smith at the very first hearing before him.

The government is now hoping for a different result before this Court. Even if there was no glaring Fourth Amendment problem based upon prior recent precedent, the magistrate court still found that the weight of the evidence was so weak that it could not imagine how a trial would convict Mr. Smith. The magistrate court correctly determined that this favor weighed strongly in favor of release.

### ii. The Nature and Circumstances of the Offenses Charged, Including Whether the Offenses Are Crimes of Violence

The offense charged is not a crime of violence and law enforcement did not confront Mr. Smith after reports that a firearm was fired or used. Rather, it was a minor traffic violation that led to the alleged firearm that was not on Mr. Smith's person.

The Magistrate Judge found that there were conditions that could protect the community. In fact, the Court fashioned conditions of release that were strict, including home detention and GPS location monitoring.

While the government always emphasizes generally that firearm possession is dangerous to the community, the government failed to specify an "articulable threat" that Mr. Smith would pose if released.[2] In order to detain a defendant, a court must "identify an articulable threat posed by the defendant to an individual or the community." *United States v. Munchel*, 991 F. 3d 1273, 1282-84 (D.C. Cir. 2021). The government has failed to identify why Mr. Smith specifically poses a threat to the community. The government only points to the firearm's characteristics that it was loaded and had an obliterated serial number and was extended by only 5 rounds. However, the Bail Reform Act has not carved out exceptions in firearms cases based upon certain characteristics and this charge remains a presumption for release case regardless of the firearm's characteristics. The reason for this is because there are many non-dangerous reasons people carry firearms. Mr. Smith has never in his past been accused of using a firearm.

Furthermore, the government misunderstands the Bail Reform Act and has failed to specify how any threat to the community would not be mitigated by the incredibly strict conditions the Court fashioned to reasonably ensure the safety of the community. The magistrate court's duty is not to guarantee the safety of the community but rather to *reasonably* assure it. Mr. Smith was not under such

---

[2] If this generalization is permitted to stand, it is hard to imagine any scenario in which a defendant charged with firearm possession would ever be released.

stringent conditions during his last periods of supervision. The government has still not been able to point to why the ordered conditions are not sufficient and for those reasons and many more, he should remain on release.

The government also tries to point to uncharged conduct, the pills and money found in the backpack during the traffic stop. *See* Gov. Opp. at 8. However, the matter that the government cites was not "uncharged." It was charged in Superior Court along with the firearm possession allegations in the instant matter. A magistrate judge found no probable cause to detain Mr. Smith pending further proceedings just like he did with the firearm allegation. Case No. 25-CF2-014289. Mr. Smith was ordered released on standard conditions. However, he was never released and was detained on a warrant for the instant matter. Furthermore, the firearm was not discovered inside the backpack where the pills were found. The pills were not distribution quantities and not packaged in that way. Furthermore, $500 is not a large amount of money when compared to the quantities that are typically found in distribution cases. Lastly, Mr. Smith took ownership of the backpack which suggests he did not think there was anything illegal inside.

### a.  <u>Mr. Smith's Personal History & Characteristics</u>

Mr. Smith is a 26-year-old man who was born in the DMV area where he has resided all his life. He has five children, who all rely upon him, one of which is a three-year-old boy who suffers from a disability. His three-year-old son has autism and suffers from seizures, requiring constant care. His mother relies upon Mr. Smith because she works full-time and does not have as much flexibility with her schedule,

working for the government. Mr. Smith is also active in his other children's lives. Undersigned counsel has conferred with two of his children's mothers, both of whom report that Mr. Smith is a great dad and that they do indeed rely upon him to co-parent their children. Prior to his arrest, Mr. Smith was making efforts to find stable work and doing side jobs to earn income for his family.

Mr. Smith grew up in poverty and crime ridden areas and was shockingly shot 11 times. In the past, he has taken pain medication to manage the sudden urges of pain that he describes as debilitating when triggered. Mr. Smith also has self-medicated with marijuana.

Also prior to his arrest, Mr. Smith was on supervised release for his sole prior felony conviction based upon offense conduct in 2023. The offense conduct in 2023 was a straw purchase case where Mr. Smith assisted another individual in providing false documentation to obtain a firearm unlawfully. Based upon his guilty plea and conviction, the Court imposed a sentence of 15 months' incarceration followed by a three-year term of supervised release – which he began serving on December 6, 2024.

Since this time, Mr. Smith has been under the courtesy supervision of the DC US Probation Office. Given the uncertainty of whether he was going to be residing with his mother in Maryland or in DC, it was uncertain whether the Maryland office would supervise him or the DC office. As a result, Mr. Smith did not get a chance to make a lot of progress on his conditions. However, after Mr. Smith was released on October 29, 2025, he met with his probation officer on October 31, 2025, where a plan

was set for him to complete his home visit, complete his substance abuse and mental health assessment, and complete his volunteer community service hours.

Other than this prior nonviolent felony conviction, Mr. Smith has three misdemeanor offenses, one of which resulted in the payment of a fine.

As the Magistrate Judge noted, Mr. Smith was not found to be in violation of his supervised release at any time and nothing about his more recent history suggested that he would not comply with the conditions of release set forth by the Court.

The government inaccurately paints Mr. Smith as an individual who has not complied with his prior terms of supervision and overinflates his history. *See* Gov. Opp. at 12. Firstly, the fact that Mr. Smith was detained pending trial in Case No. 23-cr-156 two years ago has little relevance to the Court's decision now. Not only have two years passed, but the Court in West Virginia found that the weight of the evidence favored detention, which is not the case here. Most notably, Mr. Smith did not have any ties to West Virginia, has never lived there, and had no stable residence there. Furthermore, the Court in that matter was worried about a more recent in time failure to appear from 2021. However, the government cannot argue that in the past 11 months since his release on supervision that he is a risk of non-appearance. Judge Harvey certainly did not agree that he was and went even further to note that because of how weak the government's evidence is, that it would be difficult to imagine why Mr. Smith would not want to be at every court appearance to fight this case.

In fact, prior to his arrest on this matter, he appeared in the misdemeanor mater in Virginia General District Court that resulted in a sentence of a fine. That case stemmed from alleged conduct in 2022. Judge Harvey considered the details of this matter and ultimately was only concerned if the proposed residence upon release included residing with the victim of that matter – which it did not.

Lastly, the government tries to persuade another Court to consider dismissed conduct in 2025 CF2 009199. The government charged that case in Superior Court and a judge had an entire evidentiary hearing and found no probable cause and dismissed the charge against Mr. Smith on August 13, 2025. At that hearing, the Honorable Eric Sebastian Glover said:

> Probable cause is a low standard, but it is a standard. There isn't any here. Even on the version of the facts that is most favorable to the Government, there may be some evidence that Mr. Smith bend down and like, looked at the gun. Maybe. I don't know. But that isn't possessing it….[t]hat is their burden. They have failed.

Preliminary Hearing Trans. at 59-60. Despite Judge Glover's ruling, the government still proceeded to process DNA evidence in a lab even with no case pending and now tries to re-litigate the matter at Mr. Smith's detention hearings. Most notably, even after Judge Harvey was presented with the video and the DNA evidence that coincidentally was returned on the same day as Mr. Smith's continued detention hearing, the court still found that releasing Mr. Smith was appropriate. The magistrate court also questioned the legality of obtaining DNA evidence when a case was already dismissed. Regardless, any consideration of this dismissed conduct

would involve guesswork and speculation as it is not the matter that is before the Court now.

### C. A Review of Past Cases Also Show Release is Warranted

Other defendants with far more aggravating circumstances have been released in the past year, some of which were on supervision at the time of the alleged charges:

- *US v. James Gaskins*, 25-CR-39-02 (AHA): release order affirmed by district court with defendant with long history of gun possession and violations of probation. In this case, Mr. Gaskins was charged with running from police and throwing loaded firearm. When detained, drugs were also found in satchel recovered from vehicle.

- *US v. Ramon Abass,* 25-cr-079 (TSC): release order affirmed by the district court with defendant who had six prior convictions and new arrests while on supervision. During search incident to arrest, drugs were also found.

- *US v. Nelson Bryant,* 25-cr-97 (JDB): release order affirmed with defendant with 5 prior convictions, including a 2012 Armed Robbery offense which he is still on supervision for. The Court's main reason for this affirmation was that Mr. Bryant had been compliant on his most recent period of pre-trial release supervision. The Court also emphasized that 922g cases are non-presumption cases and that release is the default position.

- *US v. Cevin Belton*, 25-cr-168 (TNM): This Court affirmed the release order despite the rebuttable presumption. Mr. Belton's prior period of supervision

also was completed successfully. Notably, his third-party custodian was his wife who relied upon him at home.

- *US v. Antowan Hagans*, 25-cr- 0114 (AHA): On supervision for a federal gun possession conviction and a state parole conviction for a prior robbery in 2015 at the time of alleged offense. Also had a recent firearm possession charged dismissed in Superior Court in Case No. 2024 CDC 7894. District court affirmed magistrate court decision to release Mr. Hagans to home detention.

- *US v. Darren Patterson,* 24-cr-204 (LLA): released despite rebuttable presumption and strength of government's evidence. Mr. Patterson also had a disabled child who relied upon him for constant care.

## Conclusion

For all of the above reasons, the release order issued by the magistrate court should be affirmed and Mr. Smith should remain on pre-trial release pursuant to the stringent conditions outlined in ECF No. 9.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob

Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Maria_Jacob@fd.org